61 So.2d 19

**HARTFORD FIRE INS. CO. v. CLARK.**

**8 Div. 597.**

Supreme Court of Alabama.

April 3, 1952.

Rehearing Denied Nov. 6, 1952.

F. W. Davies and Davies & Williams, all of Birmingham, for appellant.

Marion F. Lusk, Guntersville, for appellee.

148

FOSTER, Justice.

This appeal is from a judgment for plaintiff in a suit on a fire insurance policy. A former suit came to us on this claim from a judgment of nonsuit taken by plaintiff because of adverse rulings on demurrer to the complaint. Those rulings were affirmed on that appeal. Clark v. Hartford Fire Ins. Co., 252 Ala. 84, 39 So.2d 675.

Plaintiff then instituted another suit in which he recovered the judgment involved on this appeal. The case went to the jury on counts 4, 5 and 6; special pleas 4, 7, 19, 20, 22 and 24; special replications 2 and 3 to pleas 7, 19 and 20; special rejoinders 2 and 3 to replications 2 and 3; special surrejoinders 4, 10 and 11 to rejoinders 2 and 3. Plea 22 alleged an absence of consideration. Pleas 4 and 24 charged plaintiff with causing the fire. There was no evidence to support them, so no attention was given them.

■■ The first assignment of error relates to the judgment overruling defendant's demurrer to count 4. Appellant first contends as to count 4 that it does not allege there was an agreement by plaintiff to forbear to sue defendant for the loss against which defendant had insured him by a specified policy, as the consideration for defendant's promise to pay plaintiff $2,500, for which he sues. But it does allege there had been an actual forbearance to sue defendant for a reasonable time at the defendant's request. So that, the consideration alleged is not to forbear to sue, but that the forbearance had occurred and was at the request of defendant, in consideration of which defendant made the promise. The actual forbearance to prosecute the claim, upon the request of defendant, when one has a right to sue, is universally held to be a sufficient consideration, even though there had been no promise to do so. 17 C.J.S., Contracts, § 103, page 458, note 35, § 104, page 459, note 54; 12 Am.Jur. 578, 579, section 84; Leftkovitz v. First National Bank, 152 Ala. 521 (12), 44 So. 613; Martin v. Black's Ex'rs, 20 Ala. 309.

Appellant next contends that count 4 is defective because the claim upon which plaintiff forbore to sue is not alleged to be a valid claim.

At this point there seems to be three views. The first and the older one is that forbearance is a consideration only where the claim is in law valid, and forbearance to sue on a claim not legally enforcible can be no detriment to the plaintiff. But the older view has been modified by later decisions, expressing another view, in which the principle is entertained that the forbearance is a sufficient consideration where the claim is reasonably thought to be doubtful, on the ground that the reality of the claim upon which he has a right to sue is not the state of the law as it is ultimately discovered to exist, but the state of the knowledge of the claimant as to whether his claim has some basis upon which to stand. The third view is that the forbearance is a sufficient consideration when it results from a request of the defendant, and the claimaint believes, and has reasonable cause to believe, that he has a good claim. 17 C.J.S., Contracts, § 104, page 461. Otherwise expressed, it is that "although forbearance from suit on a clearly invalid claim is insufficient consideration for a promise, forbearance from suit on a claim of doubtful validity is sufficient consideration for a promise if there is a sincere belief in the validity of the claim." 12 Am.Jur. 582, section 87.

Appellant cites in support of its contention the case of Clark and Wadsworth v. Jones, 85 Ala. 127, 4 So. 771. In that case the question was whether or not it was a sufficient consideration for a promise to pay by the property owner that a subcontractor should forbear to file a lien for his claim. The Court held that he had no lien under the law detrimental to the defendant,

the property owner, and therefore his forbearance to file a lien did not come within the principle we are discussing, and was not a valid consideration for a promise by the property owner on the faith of it. We may observe that his right to a lien was held not to exist to the prejudice of the property owner because there was no law which provided that it be so and, therefore, he knew there was no such law, and his forbearance amounted to nothing so far as defendant was concerned and operated as no detriment in the legal acceptance of that term. We think that case does not conflict with the principle which we have stated that where a claim is one which may be reasonably thought to be doubtful, or which the claimant for reasonable cause believes in good faith to exist, forbearance to sue on it, at the request of the defendant, is sufficient consideration to support the promise of the defendant to pay the claim.

■ Count 4 does not allege that it is a valid claim or that the plaintiff in good faith believed it to be a valid claim, or that it is even of doubtful validity, but it does allege that, at the defendant's request, forbearance had occurred. It is sufficient without alleging that the claim was valid or that it was reasonably thought to be valid, or of doubtful validity, or that the plaintiff bona fide believed it to be valid. Those matters are defensive, and the burden is upon the defendant to plead any of them as an answer to count 4. It is our opinion, therefore, the demurrer to count 4 was properly overruled.

### Assignment of Error No. 2.

■ This assignment is based upon the judgment of the court overruling appellant's demurrer to count 5 of the complaint. It is sufficient for us to say that, in our opinion, count 5 is not subject to the demurrer interposed to it because it is in all material respects here involved substantially the same as count vii in the case of Simpson Sales Co. v. British General Ins. Co., 252 Ala. 337, 40 So.2d 409. It is evident that the pleader in drafting count 5 had before him count vii in the former case.

We think the differences between the two counts, as pointed out by appellant, are not of a substantial nature. The principle of those counts is well fortified by the case of Hartford Fire Ins. Co. v. Aaron, 226 Ala. 430, 147 So. 628, and other cases cited in Simpson Sales Co. v. British General Ins. Co., supra. See, also, Bankers & Shippers Ins. Co. v. Blackwell, 255 Ala. 360, 51 So.2d 498(1).

### Assignment of Error No. 3.

■ This assignment relates to the judgment of the court overruling appellant's demurrer to count 6 of the complaint. With respect to that contention, we observe that count 6 has many features of count 5, but count 5 alleges that the defendant, with knowledge of the change in the location of the property and the sale of it to plaintiff, did not thereafter give plaintiff any notice of a suspension, change of coverage, or cancellation of said policy, and that plaintiff relied upon the continued force and effect of it until the fire occurred. Whereas count 6 does not contain those words but, in lieu of them in substance, alleges that defendant consented and agreed to such removal and that the property would continue to be subject to and covered by said policy, and notified the plaintiff that the policy had been so endorsed, and in reliance upon the same the plaintiff acted with reference to other insurance on said property, not quoting its language.

The contention is made that this count does not show a consideration for said change in the terms of the policy. But we pointed out in the case of Hartford Fire Ins. Co. v. Aaron, and others, supra, that such allegations, as we have referred to in count 6, show within themselves a valuable consideration sufficient to support the amended agreement on the part of the defendant.

### Assignment of Error No. 7.

This assignment relates to the judgment of the trial court sustaining appellee's demurrer to plea 3 as an answer to count 4. That plea alleges facts to show that the policy had ceased to cover the property

burned on account of its removal to another location, and was not then within the terms of the coverage specified. The effect is to aver that the forbearance alleged in count 4 was as to a claim not valid in fact and law. If we assume that in law a removal of the property withdraws it from such coverage, and therefore prima facie that the policy ceases to be effective, this is for the purpose of contending that it is no defense to forbear to sue on a claim of that sort. But the plea did not allege that it was not reasonable for plaintiff to suppose from the facts that he had a claim of even a doubtful nature and that in good faith he did not believe that he had a valid claim. We think the plea should have borne the burden in that respect, which we stated in analyzing count 4.

Assignments of Error 13 to 18, inclusive.

The question here presented is the sufficiency of pleas 8 and 9, respectively, to counts 4, 5 and 6. Each of these pleas undertakes to set up fraud and misrepresentation on the part of the insured after the loss, and each of them avers that the statements were made in the proof of loss with the actual intent to deceive the defendant. Plea 8 is with reference to the value of the articles alleged to have been damaged, and plea 9 is with reference to the ownership of and encumbrances on the property. The demurrer was sustained to each of those pleas.

Appellant relies upon section 6, Title 28, Code, with reference to misrepresentations made in the proof of loss, referred to in said statute and providing that the same shall not defeat a recovery unless the misrepresentations are made with actual intent to deceive or unless the matter misrepresented increased the risk of loss. Of course after the loss any misrepresentation could not increase the risk of loss.

The pleas do not allege that the defendant relied upon said misrepresentations and was induced to act to its prejudice by them. It is noted that section 6, Title 28, supra, does not so require. It was said by this Court in the case of Sovereign Camp, W. O. W. v. Moore, 232 Ala. 463, 168 So.

577, that a plea of misrepresentation in insurance cases, as in others, must aver that the misrepresentation was relied upon and induced action by the defendant. It was likewise stated in the cases of New York Life Ins. Co. v. Zivitz, 243 Ala. 379, 10 So.2d 276, 143 A.L.R. 321; Liberty National Life Ins. Co. v. Trammell, 255 Ala. 1, 51 So.2d 174; Reliance Life Ins. Co. v. Sneed, 217 Ala. 669(5), 117 So. 307; Empire Life Ins. Co. v. Gee, 171 Ala. 435(2), 55 So. 166; Id. 178 Ala. 492(3), 60 So. 90. Those cases were all with reference to representations made before the issuance of the policy and not in the proof of loss.

In the case of National Union Fire Ins. Co. v. Schwab, 241 Ala. 657, 4 So.2d 128, there was a plea setting up misrepresentations in the proof of loss, and that statute was treated. The plea alleged that the false swearing was with the intent to deceive, but did not show that the insurer was misled to his injury on account of it. There was no reference made to the insufficiency of the plea on account of a failure to make such allegation and, therefore, that omission was not considered. Similar to it is the case of Orient Ins. Co. v. Parkhill, 5 Cir., 170 F.2d 510.

This question is to be analyzed from two different standpoints. One is where there is no provision in the policy itself, as alleged in pleas 8 and 9, which stipulates that the entire policy shall be void in case of any fraud or false swearing by the insured before or after the loss, and another in cases where there is such stipulation in the policy.

The cases hereinabove cited to the effect that it is necessary to allege in a plea setting up misrepresentations, not only the substance of the requirements of section 6, Title 28, Code, but also that the misrepresentation was relied upon by defendant and induced its action, do not seem to refer to a policy provision similar to the one set up in pleas 8 and 9. But in those cases reliance is had upon the general principle of false representations and fraud, as well as warranty aided by section 6, Title 28, and the consequences visited upon one who obtains a contract of insurance by the use of such false and fraudulent means.

When it comes to the matter of proofs of loss or false swearing after the loss has occurred, when the policy clause provides for a forfeiture for so doing, the weight of authority is to the effect that when such false swearing and fraud are sufficient, as measured by the standards of section 6, Title 28, it is not necessary that it be relied upon and have induced action by the defendant, but it is a good defense because the policy itself declares that it shall be a good defense. 45 C.J.S., Insurance, § 1021, pages 1247–1251; 29 Am.Jur. 849, section 1132. The cases that we have in Alabama touching upon the subject in addition to the Schwab case, supra, are Tubb v. Liverpool, London and Globe Ins. Co., 106 Ala. 651, 17 So. 615; Feibelman v. Manchester Fire Assur. Co., 108 Ala. 180, 19 So. 540. Neither of those cases emphasize the fact that it is necessary to induce action for such fraud to constitute a good defense under the terms of the policy, as alleged in pleas 8 and 9.

We think the distinction between such a plea relating to false swearing after the loss and one relating to misrepresentation and fraud prior to the loss is that in the former the policy is specific that it shall be void where such false swearing and fraud occur, which of course must also be sufficient to satisfy the statute, supra. But the cases which declare that where a false representation occurs in the application or prior to the issuance of the policy, it must be relied upon and have induced action by the defendant, depend not upon any such specific provision in the policy but upon an application of the general principles of fraud inducing the execution of a contract.

■ But to preclude recovery because of fraud or false swearing in the proof of loss, the statement must relate to matter which is material. Hence a slight exaggeration of the amount of the value of the property destroyed will not defeat the claim entirely. To bar recovery, the overvaluation must be so extravagant as to lead to the conclusion that it was due not to a mistake in judgment but to an intention to defraud. 45 C.J.S., Insurance, 1021, pages 1249, 1250; 29 Am.Jur. 851,

section 1134; National Union Fire Ins. Co. v. Schwab, supra.

■ Plea 8 makes explicit allegation that the false and fraudulent statement there charged was made with the actual intent to deceive, but it does not show that the false statement was not a slight exaggeration of the value of the property, or that such statement was material, although it was made, as alleged in the plea, with actual intent to deceive. We think, therefore, that the demurrer to plea 8 was properly sustained.

■ Plea 9 relies upon the same provision in the policy of insurance, but the misrepresentations alleged to be false and fraudulent were with respect to the sole and unconditional ownership of the property by the plaintiff, alleging that statement is false and fraudulent and made with the actual intent to deceive. The demurrer to that plea in one ground points out the fact that it is not alleged who had any interest in or encumbrance on said insured property. We think that ground of demurrer points out a substantial defect in the plea.

In such a plea it is necessary, in order to apprise the plaintiff of the facts which will enable him to defend against it, to allege in what respect the policy was violated and in what way the statement is false that the plaintiff was the sole and unconditional owner of the property. We have condemned the form of pleading set forth in plea 9. Tarrant Land Co. v. Palmetto Fire Ins. Co., 220 Ala. 428(10), 125 So. 807; Empire Life Ins. Co. v. Gee, supra; Home Ins. Co. v. Jones, 231 Ala. 484, (13), 165 So. 211. Upon the basis of those cases, we think the demurrer to plea 9 was properly sustained.

■ We also observe that pleas 8 and 9 are addressed to all three counts, numbered 4, 5 and 6. For the reason pointed out above in respect to assignment of error 7, those pleas are no defense to count 4, even though they contain sufficient allegations. The argument with respect to them as an answer to count 4 would be different from an argument as to their applicability to counts 5 and 6. The same legal principles do not apply and yet they are argued

in bulk. When so, the pleas may be good as to one or more of the counts and not as to others, and there would not be reversible error with respect to the ruling on those pleas if they were not good as to one count. Where the assignments of error are so related as that they may be treated as being predicated upon a single argument, the fact they are argued in bulk is not objectionable. But that principle does not apply where the assignments of error are not dependent upon the same legal principles. City of Montgomery v. Moon, 208 Ala. 472, 94 So. 337; Wells Co. v. Lane, 217 Ala. 10, 115 So. 77; White Dairy Co. v. Sims, 230 Ala. 561, 161 So. 812.

We have seen fit to consider the contention of appellant as to the merits of pleas 8 and 9, although they have no application to count 4.

### Assignments of Error 46, 47, 48, 58, 59 and 60.

These assignments are with reference to pleas 21 and 26, as an answer to counts 4, 5 and 6, each respectively. Plea 21 enlarges upon plea 9, and plea 26 enlarges upon plea 8, above treated under assignments 13 to 18, inclusive.

For the reason that said pleas are no defense to count 4, and as to which the argument is not applicable, we will not determine whether they are good as to counts 5 and 6, since the one argument was made as to all three counts.

### Assignments of Error 28 to 39, inclusive.

These assignments relate to the action of the trial court in sustaining demurrer to pleas 13, 14, 15 and 16 with respect to each of the three counts, numbered 4, 5 and 6. There is an assignment of error as to each of said pleas in respect to each of said counts, and they are all argued in bulk. The argument with respect to their application to count 4 is entirely different from that in respect to their application to counts 5 and 6. In fact, appellant does not argue them separately with respect to count 4, and its argument has no application to them as an answer to count 4. Clearly they are no answer to count 4 and were argued in bulk. Upon the basis of the authorities above cited, we cannot consider the merits of those pleas as an answer to counts 5 and 6.

### Assignments of Error 40, 41 and 42.

These assignments are based upon the ruling of the court sustaining the demurrer to plea 17. That plea referred to plea 2 for certain provisions in the policy and undertook to allege a breach thereof thereby avoiding the policy. The particular provision in the policy alleged to have been breached is as follows: "The company shall not be liable for loss occurring while the hazard is increased by any means within the control or knowledge of the insured." The plea alleges that at the time of the fire the hazard was increased by means within the control or knowledge of the insured, in that the flue or flues of a certain building were made of tin and were defective and dangerous or allowed to become overheated at the time of the fire, and that the electric wiring was defective or otherwise overloaded so as to constitute a danger by fire. And further that the hazard insured against was increased by said means which were within the knowledge or control of the insured after the issuance of the policy and prior to the time of the fire.

We think said plea was subject to various grounds assigned, viz., that it is too vague, indefinite and does not state sufficient detail to inform plaintiff of what the specific defense is, and for that reason the ruling of the court should be sustained. It could be sustained for the reason pointed out above, that it is not in any respect an answer to count 4, and being argued in bulk with respect to all three counts, it is subject to the rule which we have referred to above.

### Assignments of Error 43, 44 and 45.

These assignments relate to the action of the court in sustaining demurrer to plea 18. While these assignments may be subject to the comments made above with respect to a bulk argument, appellee does not make that insistence in brief, but is asking for a "clean cut" decision of the question raised by plea 18, which is in substance that the plaintiff and one Stocks

were operating the business as partners and that the machinery and articles alleged in the complaint to have been destroyed by fire were used by the plaintiff and Stocks in the operation of the business, and that said Stocks willfully caused said property to be burned.

It will be observed that the plea does not allege that the property destroyed was owned by the partnership or was owned otherwise than by the plaintiff, or that Stocks had any interest in it. It is consistent with that plea that an arrangement was made whereby plaintiff furnished said property for use in the business and Stocks made other contributions to it, but the plaintiff continued to be the sole owner of said property.

So that the question invited by these assignments of error is whether or not it is a good defense to a claim on the insurance policy that Stocks, who had no interest in the ownership of the property, willfully caused it to be burned. We will therefore undertake to respond to that question. It seems to be fully answered by the case of Feibelman v. Manchester Fire Assur. Co., 108 Ala. 180, 19 So. 540, 548; in which an agent of the owner of the property had it in charge, the owner of the property residing in another state. The evidence showed that the agent fraudulently caused the property to be burned. There was no proof of any knowledge thereof or participation therein by the plaintiff who was the owner of the property and the party insured. There was no provision in the policy that plaintiff should be responsible for the fraudulent destruction of the property by her agent. The Court observed: "The authorities are meager upon the question, but we have given it due consideration, in conference, and are of the opinion that such losses are within the perils of the policy, unless specially excepted therefrom by some clause or condition of the policy." To the same effect, see Manchester Fire Assur. Co. v. Feibelman, 118 Ala. 308(9), 23 So. 759; Orient Ins. Co. v. Parkhill, supra; Williams v. Fire Ass'n of Philadelphia, La.App., 193 So. 202; Hawkins v. Glen Falls Ins. Co.,

115 W.Va. 618, 177 S.E. 442; Aetna Ins. Co. v. Carpenter, 170 Va. 312, 196 S.E. 641.

The allegations in plea 18 that the plaintiff and Stocks were partners, and as such were using the insured property, do not show that the property was owned by the partnership. It is clear that such allegation was studiously omitted because it appears from the evidence in the case that the property was not owned by the partnership, but that plaintiff was the owner of it. But the fact that the partnership was using it had the effect of constituting each partner an agent of the other in respect to its use in the partnership business. So that for the argument, we may assume on the meager allegations of the plea that Stocks was an agent of the plaintiff in and about the use of said property. But there is no allegation in the plea that plaintiff had any knowledge of or participated in the burning of the property by Stocks.

The authorities submitted by appellant in brief relate to a situation where partnership property was burned by one of the partners, and the innocent partner was suing on the insurance policy. The authorities hold that it was not available for him to maintain such a suit. The difference between that situation and plea 18 is apparent and needs no particular discussion.

### Assignments of Error 49, 50 and 51.

These assignments are with reference to plea 23 as an answer to counts 4, 5 and 6, each respectively. Plea 23 is substantially the same as plea 18, with the additional allegation that the insured property was willfully burned by said Ray Stocks, with the knowledge, acquiescence or ratification of the plaintiff. As was said with reference to plea 18, under assignments of error 43, 44 and 46, appellee does not make the point that there was an argument in bulk with respect to the application of the plea to those three counts separately.

Appellee calls attention to the fact the court overruled the demurrer to plea 24 to said counts of the complaint, in which it is alleged that the property was willfully burned by said Ray Stocks with the knowledge and acquiescence of plaintiff, and that plaintiff ratified said burning by said Stocks.

We think there is no substantial difference between the two pleas in respect to the principle sought to be made available.

The authorities referred to above under assignments of error 43, 44 and 45, holding the principal responsible for the willful burning of this property by an agent so as to defeat recovery on a policy of insurance, declare that the burning by said agent must be "with the knowledge or participation therein by the plaintiff" or "with his privity and consent." If plea 23, supra, is sufficient to set up participation in a legal sense by the plaintiff, it is clear that plea 24 does not require any greater proof than does plea 23 and, therefore, the appellant has sustained no injury by reason of the court's sustaining the demurrer to plea 23, since the defendant had the same right of defense under plea 24.

### Assignments of Error 52, 53 and 54.

These assignments relate to the alleged error of the trial court in sustaining demurrer to plea 24: whereas the record shows on page 60 that the demurrer to plea 24 was overruled.

### Assignments of Error 55, 56 and 57.

The subject matter of these assignments and their treatment is the same as that set forth in respect to assignments of error 40, 41 and 42.

### Assignments of Error 61, 62 and 63.

These assignments relate to the demurrer sustained by the court to plea 27 as an answer to counts 4, 5 and 6. Plea 27 sets up as a defense the violation of a duty required by the policy of the plaintiff not set up in other pleas. This plea, as others hereinabove referred to so far as count 4 is concerned, is not a good defense for the reason that it relates to occurrences prior to August 27, 1947, at which time, according to the allegations of count 4, defendant promised to pay the plaintiff $2,500 on account of said fire loss.

For the reasons heretofore stated, we will not enter into a consideration of the question of whether it is a good plea to counts 5 and 6 because the argument is in bulk.

### Assignment of Error 64.

This assignment relates to the judgment of the trial court in overruling appellant's demurrer to replication 2 as an answer to pleas 7, 19, 20 and 22, each separately. That replication in substance is that defendant with full knowledge of the matters and things set up in said pleas entered into negotiations or transactions with plaintiff which recognized and treated the policy as still in force.

Replication 3 added to such averments in substance that plaintiff was thereby induced to incur trouble and expense in and about the negotiations for the adjustment of liability under said policy. The demurrer was overruled to each replication.

They purported to reply to pleas 7, 19, 20 and 22 as defenses to counts 4, 5 and 6, respectively. There is no error assigned on the ruling of the court as to replication 3. The only argument in brief as to replication 2 is that it does not allege "what kind of negotiations or transactions were had with plaintiff, and the allegations are mere conclusions." The brief then cites National Surety Co. v. Julian, 227 Ala. 472, 150 So. 474.

Replication 2 was patterned after the replication considered in the Julian case, supra, and in Queen Ins. Co. v. Young, 86 Ala. 424, 50 So. 116, in so far as concerns the details as to the negotiations and transactions alleged to have been a waiver, but it did not go further and allege that plaintiff was thereby induced to incur trouble and expense in and about the negotiation for an adjustment of the loss. Those allegations were made in replication 3, but not in 2 in the instant case. Those authorities hold that the allegations as to the negotiations and transactions are not subject to demurrer on the ground that they do not give details and are conclusions. But to be a good replication they should show that the negotiations induced plaintiff to incur trouble and expense or, we may add, some other sufficient consideration. Great American Ins. Co. v. Dover, 219 Ala. 530, 122 So. 658.

There was a ground of demurrer going to that imperfection in replication

2, but it is not argued in brief. We will only consider the grounds of demurrer to the replications which are insisted upon on the appeal.

To plaintiff's replications, supra, defendant filed a general and two special rejoinders. They are in substance that prior to the matters set up in the replications, plaintiff and defendant entered into a written non-waiver agreement, with copy attached to the rejoinders, to the effect that anything done or to be done by defendant or on its behalf in connection with the loss or damage or other matter relative thereto shall not waive, invalidate, forfeit or modify any of their rights under the policy.

There is no ruling of the trial court which presents for our consideration the sufficiency of those rejoinders. Plaintiff filed several surrejoinders to them. Demurrers to some of them were overruled.

### Assignment of Error 69.

This assignment of error relates to the demurrer to surrejoinder 4, which undertakes to set up fraud in the procurement of the non-waiver agreement referred to in defendant's rejoinders above mentioned.

Appellant insists that the facts alleged in said surrejoinder 4 do not show any fraud in respect to the execution of the non-waiver agreement, and that is the question now to be considered. It will be noted that the non-waiver agreement, referred to, has the effect of waiving any right on the part of the plaintiff to claim that by making an investigation of the loss, defendant waives any forfeiture or any invalidity which may exist in respect to the policy, or the liability of the defendant thereon and, therefore, the non-waiver agreement contains more than a mere written permission to investigate plaintiff's loss, and the fact that his statement in that connection, in substance that it would not be possible to investigate plaintiff's loss without said non-waiver agreement, may be the expression of an opinion on the part of the person so stating and would not be the basis alone for fraud, does not defeat the effect of the misstatement alleged as to the contents of the agreement. But since the surrejoinder otherwise alleged facts upon which such fraud may be based, it is not defective for containing matter which is not alone available for that purpose. In this connection it is said in the case of American National Ins. Co. v. Wright, 205 Ala. 186, 87 So. 577, that the allegation of matters of opinion or statements of law alleged in the plea do not render the plea defective when it appears that such opinion was made upon the basis of facts which are otherwise alleged in the plea, and which are sufficient without the statement of opinion or of law.

Drawing a distinction between that situation and the one set up in other cases referred to, this Court in the Wright case, supra, made it plain that the fraud must be based upon facts alleged in the plea, which must be sufficient to that end. But it is no objection to the plea if, in addition thereto, it alleges there was some representation made as to the law or opinion expressed which was not necessary to support the allegations of fact in order to sustain the plea of fraud.

We have a line of cases which hold that when the fraud is based upon a single transaction consisting of several statements of facts so alleged in the plea, all must be substantially proven as alleged. Cartwright v. Hughes, 226 Ala. 464, 147 So. 399. But the strictures of that principle have a limitation, as declared in the case of American Nat. Ins. Co. v. Wright, supra.

### Assignment of Error 70.

The contentions of appellant with respect to the insufficiency of surrejoinder 10 as an answer to defendant's rejoinders 2 and 3 are that it does not appear whether said alleged contract set up in said surrejoinder was verbal or written, and further that said matters appear to have been made at the time of or prior to the execution of the non-waiver agreement and are not included in it.

We think the surrejoinder is not subject to the particular defects which are thus insisted upon. In the first place, the non-waiver agreement does provide that it is made so that an investigation may be had as to the appropriate values of the amount of the loss without delay. The fact that this is alleged in the surrejoinder to be a

condition does not make it subject to any defect pointed out in the argument.

### Assignment of Error 71.

Attention is called to that feature of surrejoinder 11 which alleges that, after the defendant had consumed an unreasonable time and thus caused the delay in investigating plaintiff's claim and asserting the amount of the loss which plaintiff sustained, and after the defendant had induced the plaintiff to prepare proofs of loss, the defendant promised plaintiff that payment would be made by a draft to be mailed from Atlanta, Georgia. Such promise on the part of the defendant, based upon a valuable consideration and with full knowledge of the facts, was itself a waiver by the defendant of the forfeiture claimed by reason of the matters set up in defendant's pleas 7, 19 and 20.

There is no argument advanced by appellant in connection with this assignment of error which needs to be further treated.

### Assignment of Error 74.

We see no occasion to comment in respect to this assignment of error.

### Assignments of Error 75, 76 and 77.

These assignments relate to the action of the trial court in overruling appellant's objection to certain questions propounded to the witness Stocks. Stocks was a witness introduced by defendant. On examination it was shown that Stocks procured insurance on the property which was burned, and was testifying in the case for the defendant. Upon cross examination of him by plaintiff he was asked whether or not he had been indicted, to which he replied "yes," and also as to whether he had been tried, to which he answered "yes," and also as to whether he had been acquitted, and he answered "yes." There was no ground of objection to the question as to whether he had been indicted. The other objections were interposed after he had answered, and the only grounds stated were general.

■ Appellant now insists there is error shown by the record in that respect based upon the principle that a judgment of acquittal of the defendant in a criminal case is not admissible in favor of the defendant against another when the issue arises in a civil suit between them as to the commission of a crime involved in the civil case. Fidelity-Phenix Fire Ins. Co. v. Murphy, 226 Ala. 226, 146 So. 387.

■ We think there should be more specific grounds of objection asserted to raise the question, but the reason for the principle declared in the Murphy case shows that it has no application here. The witness Stocks is not a party to this suit and there is no controversy with him in respect to it, in which it is shown that he had an interest at the time of the trial. He was introduced as a witness by the defendant, although he was an alleged partner of the plaintiff, they each owning separately property used in the partnership, as the jury could find. The purpose of his testimony by the defendant was with respect to the ownership of the property alleged to have been destroyed, and for which the instant suit was being prosecuted, and the nature and effect of other insurance. He had been charged with burning the property and had taken out other insurance. We do not see wherein it was prejudicial to the defendant in the case for plaintiff on cross examination to prove by witness Stocks that he had been indicted, tried and acquitted of the charge.

### Assignment of Error 85.

This assignment of error relates to the refusal of the court to give the defendant its requested affirmative charge in respect to count 4. We have heretofore stated what count 4 is and the substance of it.

The question now is whether there is any evidence to support its allegations. First, whether or not the defendant promised to pay plaintiff $2,500 on account of said fire loss. Said promise is alleged in said count to have been made on or about August 27, 1947, the fire having occurred November 8, 1946. The count alleges that the consideration of the promise made by defendant to pay said sum was that plaintiff forbore for a reasonable length of time to sue the defendant for said loss, as requested by the defendant. The evidence with respect to the forbearance there alleged was given

by the plaintiff himself. This testimony did tend to support that allegation of the count.

With respect to the promise to pay, alleged to have been made by defendant on August 27, 1947, the evidence submitted is that of a letter dated August 27, 1947 to plaintiff's attorney as the result of the passage of several other letters between him and Mr. Cobb, the adjuster. This letter of August 27th was written by Mr. Cobb to plaintiff's attorney to acknowledge the receipt of the proof of loss, without making any comment as to its sufficiency, and advising him that it was being mailed to the southern department of the defendant in Atlanta and "draft in payment of the claim will be made from there." Proof of loss had previously been sent to Mr. Cobb and he had returned it to have some corrections made. The corrections were made and the proof of loss returned to Mr. Cobb, and the letter of August 27th was in reply.

There had been much consideration of the question whether the property was intentionally destroyed by fire caused by Stocks. There was some additional insurance which Stocks had procured in the name of himself and plaintiff, of which the plaintiff said he had no knowledge. Stocks claimed an interest in the property, but plaintiff denied Stocks' interest in it. Mr. Cobb, the adjuster, was investigating the whole set up. Proof of loss had not been made until it was suggested by Mr. Cobb in a letter dated May 8, 1947. The plaintiff delayed taking action pending the investigation by Mr. Cobb and finally upon receipt of the proof of loss, in a form to which no objection was made, Mr. Cobb wrote the letter of August 27, 1947, to which reference was made, wherein he stated to plaintiff's attorney that draft and payment of the claim would be made from Atlanta.

We think from all the circumstances in the case the jury was properly permitted to determine the questions of whether plaintiff did forbear for a reasonable time to sue defendant for the loss after November 8, 1946, at defendant's request, Mr. Cobb, the adjuster, being the one who made the request; and whether or not the letter of August 27, 1947, effectuated an obligation on the part of defendant to pay the plaintiff said sum of $2,500. It may be that the letter alone would not be sufficient, but it should be interpreted in the light of communications and transactions previously occurring between them, and it is not an unreasonable inference to be drawn that it was intended as a promise to pay.

The question then arises as to whether Mr. Cobb, the adjuster, was authorized to make settlement of plaintiff's claim. It is clear that Mr. Cobb was sent by defendant to the scene of the fire and was duly authorized to make an adjustment of this claim for the defendant. It is so stated in a letter from defendant to plaintiff dated February 10, 1947, and further correspondence shows that Mr. Cobb had such authority.

The legal question was presented of whether or not such authority justified Mr. Cobb in binding the company to pay plaintiff the sum of $2,500, the extent of the coverage which was much less than the value of the property, after he had made a full investigation, and after having received the proof of loss and had the same corrected in such manner as to require no further comment from him. The authority of an adjuster has been considered in some of our cases. In the case of Queen Ins. Co. v. Young, 86 Ala. 424, 50 So. 116, the statement of law is made that *special authority* to an agent to adjust loss and damage does not confer authority to bind the company by a promise to pay the loss. It is also said that if the company, with knowledge of the forfeiture, had authorized an agent to adjust the loss the liability and the promise to pay would ordinarily be implied. In the case of Georgia Home Ins. Co. v. Allen, 119 Ala. 436, 24 So. 399, the principle is fully recognized that when an insurance company sends one to the scene of the fire immediately after it occurs with full power and authority to make examination, investigation and adjustment of the loss, he is regarded as the general agent to that extent and may waive the performance of the conditions in the policy. On another appeal of that case in 128 Ala. 451, 30 So. 537, the same statement of the law is made, citing the cases of Liverpool, London and Globe Ins. Co. v. Tillis, 110 Ala. 201, 17·

So. 672, and United States Life Ins. Co. v. Lesser, 126 Ala. 568, 28 So. 646. In the Tillis case the testimony showed that the adjuster had such authority as is generally exercised by adjusters, and it was said that the insured dealing with him as such, in the absence of notice to the contrary, had the right to presume that he was authorized to act and to bind the company as to all matters within the scope of his duties as an adjuster, and had the authority to waive the conditions of the policy. See, American Ins. Co. v. Millican, 228 Ala. 357, 153 So. 454; Home Ins. Co. v. Scharnagel, 227 Ala. 60, 148 So. 596. In the Lesser case, supra, it is that the fact of agency and his authority as such is a question to be determined by the jury when it rests in parol or as a matter of inference from the evidence.

We have reached the conclusion with respect to this question that there is sufficient evidence in this case for the jury to infer that the adjuster was a general agent of defendant in respect to the matter of adjusting and settling this claim, and if they find as a proper inference that he was so authorized it was also a question for them to determine whether or not the letter of August 27, 1947, was intended as a promise to pay the amount of plaintiff's claim.

### Assignment of Error 81.

This assignment relates to the refusal of the affirmative charge requested by defendant as to surrejoinder 11, to which we referred under assignment 71.

For reasons included in our discussion of assignment 85, we think there was no error in refusing the charge here in question. Moreover, plaintiff is not suing to recover under surrejoinder 11. The charge is not properly drawn to invite an inquiry of whether the jury should find for plaintiff on the issue made by surrejoinder 11.

### Assignment of Error 84.

This assignment relates to the refusal of the affirmative charge for defendant as to count 6.

We have stated the substance of count 6 under assignment 3. It is insisted that this charge should have been given because it is claimed there was no evidence to show any contract on the part of appellant's agent that the property would continue to be covered by the policy at its new location. But we think the circumstances were such as to authorize the jury to infer that such was the meaning of the acts and conduct of defendant's agent who wrote the policy and was informed as to its change of location.

### Assignment of Error 87.

This assignment relates to the refusal of the affirmative charge as to surrejoinder 10. It is in the same form as the charge as to surrejoinder 11, referred to under assignment 81. It was refused without error.

### Assignment of Error 88.

The same comment applies to this assignment.

### Assignment of Error 92.

This assignment relates to the refusal to give written charge 18, at the request of the defendant, as the same appears on page 283 of the record. The effect of the charge is to declare affirmatively that the policy sued on was violated by reason of three named policies in addition to the one sued on. The justification for such a request is the fact that the three pleas (Nos. 7, 19 and 20) of the defendant, which were held not to be subject to demurrer, allege there was a forfeiture of the policy sued on because of such additional insurance prohibited by the policy. The three policies referred to in said refused charge were given in evidence and were issued to E. L. Clark and Ray Stocks conducting business as the Ideal Manufacturing Company. Plaintiff claims that he knew nothing about those policies of insurance, that they did not cover his personally owned property embraced in the policy sued on, and that Stocks procured the issuance of said policies without his knowledge or consent.

It is therefore clear that the issue so made became one for the decision of the jury, and such an affirmative instruction as contained in refused charge 18 was properly refused, in that it withdrew from the jury a finding of fact in connection with the disputed issue.

### Assignment of Error 94.

This assignment of error is predicated upon the refusal to defendant of the written charge to the effect that if the jury believe the evidence the non-waiver agreement is binding on the parties. This is in substance an affirmative charge against plaintiff on the issues raised by the plaintiff's surrejoinders to the defendant's rejoinders setting up the non-waiver agreement. We think there was sufficient evidence to go to the jury for them to determine whether or not the plaintiff's surrejoinders 4, 10 and 11 were proven. Of course, the non-waiver agreement would not be binding upon the parties in this case, as declared by the requested charge, if either of the surrejoinders referred to above was proven to the reasonable satisfaction of the jury. The effect of the requested charge is to withdraw that issue from the jury.

### Assignment of Error No. 101.

This assignment relates to the refusal by the court to give to the jury, at the request of the defendant, written charge 27. It is sufficient to say with respect to it that it withdraws from the jury consideration of the issues which we have stated should be determined by them. It is not necessary for us further to discuss this assignment.

### Assignment of Error 102.

This assignment relates to the refusal of charge 28, requested by the defendant. It is predicated upon a finding by the jury from the evidence that Ray Stocks was in partnership in business with the plaintiff and that the insured property was willfully burned by said Stocks, although the plaintiff may have had nothing to do with it. For the reasons which we have stated under assignments of error 43, 44 and 45, it was proper to refuse this charge.

The other assignments of error to which we have not specifically referred, and which have been argued in groups by appellant, are 108 and 109 in one group, 112 in another, 19 to 27 inclusive in another group, and 17 in another. We think they are of such nature as do not require further discussion than has been given in this opinion.

After carefully considering this record, containing one hundred and fifteen assignments of error, we wish to add that the material issues in the case were duly submitted to the jury, and the evidence was full and the range of it was wide, and the charge clear and precise, and the verdict responded to the charge. If there was an error, it did not, in our opinion, injuriously affect the substantial rights of appellant and was therefore harmless under Rules of Practice in Supreme Court, rule 45, Code 1940, Tit. 7 Appendix. We have studiously treated the substantial principles of law presented, and think the judgment should be affirmed.

Affirmed.

LAWSON, SIMPSON and STAKELY, JJ., concur.